**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

BARTHALOMEW J. MCHUGH )
and )
EM, a minor child, by next friend and his )
natural father Barthalomew J. McHugh, )
) CAUSE NO.
Plaintiffs, )
)
vs. ) 4:06-cv-0164-DFH-WGH
)
INDIANA FAMILY AND SOCIAL )
SOCIAL SERVICES ADMINISTRATION, )
INDIANA DIVISION )
OF FAMILY RESOURCES, )
INDIANA DEPT. OF CHILD SERVICES, )
DUBOIS CO. DEPT. OF CHILD SERVICES; )
AND )
EDWARD MITCHELL ROOB JR, )
JAMES ROBERTSON IV, JAMES W. PAYNE, )
SUSAN LESKO, LANA TOBIN, )
AMY TEMPEL, GLORIA RAHMAN, )
all in their individual and official capacities )
)
Defendants. )

**<u>VERIFIED COMPLAINT</u>**
**<u>AND DEMAND FOR JURY TRIAL</u>**

## A. PARTIES

**Plaintiffs:**

1. Plaintiff Barthalomew J. McHugh (hereafter "Bart") is the natural and legal father of Plaintiff EM. Bart's paternity of EM was legally established by Order of the Dubois Circuit Court on January 25, 2000.

2. Plaintiff EM (dob 1999), by his next friend and natural father Bart (hereafter "EM"). EM is the minor child of Bart and mother Kimberly Jones. Bart and Kimberly were never married to each other.

3. The address of both Plaintiffs is: 136 North Patterson, Clarksville, IN 47129

**Defendants:**

4. Defendants Indiana Family And Social Services Administration (hereafter "FSSA"), Indiana Division of Family Resources (hereafter "DFR"), Indiana Dept. of Child Services (hereafter Indiana-DCS), Dubois Co. Dept. Of Child Services, (hereafter "Dubois-DCS"), are all subdivisions / government agencies of the state of Indiana.

5. Defendant Edward Mitchell Roob, Jr. (hereafter "Roob") is the Secretary of the FSSA; Defendant James Robertson IV (hereafter "Robertson") is the Director of the DFR; Defendant James W. Payne (hereafter "Payne") is the Director of the Indiana-DCS. These Defendants were policy-makers on matters alleged herein related to the customs, policies, practices, training, supervison, hiring, and discipline of employees and agents of the FSSA, DFR, Indiana-DCS, and their Regional and County offices respectively.

6. Defendant Susan Lesko (hereafter "Lesko") is a Regional Director of Indiana-DCS and also the Local Director of Dubois-DCS. Lesko is a supervisory official and responsible to carry out the policies of FSSA, DFR, and Indiana-DCS; and oversee the conduct and training of Supervisor Lana Tobin and Family Case Manager Amy Tempel and all other employees and agents working in the Dubois-DCS Office.

7. Defendant Lana Tobin (hereafter "Tobin") is a Supervisor for the Dubois-DCS. Tobin is a supervisory official and responsible to carry out the policies of FSSA, DFR, and Indiana-DCS; and oversee the conduct and training of Family Case Manager Amy Tempel and all other Family Case Managers, employees and agents assigned to her by Lesko and Dubois-DCS.

8. Defendant Amy Tempel (hereafter "Tempel") is the Family Case Manager assigned to Case Number 331892219 by the Dubois-DCS (same number assigned for both AS and EM).

Tempel had the primary front-line responsibility to protect EM from abuse or neglect, whether that is at the hands his parent or the state, and to act in the best interests and protect the rights of EM.

9. Defendant Gloria Rahman (hereafter "Rahman") was Attorney/Agent for the Dubois-DCS, and provided legal advise, prepared all pleadings filed in behalf of Dubois-DCS, and prepared all of the actual Orders ready for Dubois Circuit Court Judge William Wiekert to sign, in all cases involving EM.

10. Defendant government entities FSSA, DFR, Indiana-DCS, and Dubois-DCS are sued based upon their official and de facto policies and practices and lack of supervision, which encouraged and/or condoned unconstitutional conduct actionable under § 1983.

11. Defendants Roob, Robertson, Payne, Lesko, Tobin, Tempel, and Rahman are each sued in their individual and official capacities.

12. Each of these Defendants, caused and are responsible for, the below described unlawful conduct and resulting injuries by, among other things, personally participating in the unlawful conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to Plaintiffs constitutional rights to initiate and maintain adequate training, supervision and controls; and by ratifying the unlawful and unconstitutional conduct that occurred by agents, employees, and officials under their direction and control, including failing to take remedial or disciplinary action.

13. At all times relevant to this Complaint, all Defendants were persons acting under color of state law, and authority prescribed to them by the Indiana FSSA, Indiana-DFR, Indiana-DCS,

and/or Dubois-DCS.

14. At all times relevant to this Complaint, Defendants, and each of them, acted within the course and scope of their employement for either the FSSA, DFR, Indiana-DCS, and Dubois-DCS.

15. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other Defendants.

16. The addresses of the Defendants are:

Family Social Services Administration
c/o Edward Mitchell Roob, Jr, Secretary
402 W. Washington St , Room W-461
Indianapolis, IN 46204-7083

in his individual and official capacity :
Edward Mitchell Roob, Jr.
Family Social Services Administration
402 W. Washington St , Room W-461
Indianapolis, IN 46204-7083

Division of Family Resources
c/o James Robertson IV, Director
402 W. Washington St , Room W-392
Indianapolis, IN 46204-7083

in his individual and official capacity:
James Robertson IV
Division of Family Resources
402 W. Washington St , Room W-392
Indianapolis, IN 46204-7083

Department of Child Services
c/o James W. Payne, Director
402 W. Washington St , Room W-392
Indianapolis, IN 46204-7083

in his individual and official capacity:
James W. Payne
Department of Child Services
402 W. Washington St , Room W-392
Indianapolis, IN 46204-7083

Dubois County Dept of Child Services
c/o Susan Lesko, Regional / Local Director
611 Bartley Street, Jasper, IN 47547

in her individual and official capacity:
Susan Lesko
Dubois County Dept of Child Services
611 Bartley Street, Jasper, IN 47547

in her individual and official capacity:
Lana Tobin, Supervisor
Dubois County Dept of Child Services
611 Bartley Street, Jasper, IN 47547

in her individual and official capacity:
Amy Tempel, Family Case Manager
Dubois County Dept of Child Services
611 Bartley Street, Jasper, IN 47547

in her individual and official capacity:
Gloria Rahman, Agent/Attorney
Dubois County Dept of Child Services
735 Main Street, Ferdinand, IN 47532

17. Puruant to Indiana law a copy of this Complaint was also mailed to:

Indiana Attorney General Steve Carter
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Other Individuals:**

18. The following persons are not parties to this Complaint, but references are made to them and understanding their relationships are important:

a. Kimberly Jones (hereafter "Kim") is the natural mother of both EM and AS.

b. Mark Small (hereafter "Mark") is a male companion who lived in the same household with Kim for the time period covered by this complaint. Mark is the father of AS. Kim and Mark were never married to each other.

c. AS (dob 2005) is the natural son of Kim and Mark. AS is a sibling half-brother to EM.

d. MM (dob 2004) is the natural daughter of Bart and Paige Belk. Bart has shared joint custody and equal parenting time with MM since her birth. MM is a sibling half-sister to EM.

## B. JURISDICTION AND VENUE

19. This is a civil rights action under 42 U.S.C. §1983, §1985, §1986. Jurisdiction is based on 28 U.S.C. §1331 and §1343. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. §1367.

20. Venue in the Southern District of Indiana is proper pursuant to 28 U.S.C. §1391. Both Plaintiffs are residents of Clark County, Indiana. The principal business offices of Defendants Dubois-DCS, Tempel, Tobin, Lesko, and Rahman are all located in Dubois County,

Indiana. The principal business offices of Defendants FSSA, DFR, and Indiana-DCS and are all located in Marion County, Indiana. All acts complained of herein took place exclusively within the boundaries of the counties making up the Southern District of Indiana.

21. Plaintiffs provided the state of Indiana Notice of Tort Claim as required by Indiana Code § 34-13-3 on April 20, 2006. The Office of the Indiana Attorney General notified Plaintiffs of their decision to decline settlement by letter dated July 17, 2006 (File Number 06-02879).

## C. NATURE OF THE CASE

22. This is a civil rights action arising from unlawful and unconstitutional actions taken by the Defendants in response to AS testing positive for methamphetamine at birth. AS's mother Kim and father Mark also tested positive for methamphetamine on July 29, 2005 at which time Defendants Tempel and Dubois-DCS removed the infant AS along with 6-year-old EM from the home in which Kim and Mark resided. Plaintiff Bart is and was at all times the legally recognized natural father of EM. Bart paid child support and EM maintained an ongoing significant relationship with his father Bart since birth. Defendants removed EM from his primary residence and confined him in state foster care for 111 days when his father Bart immediately made known to Defendants both orally and in writing on numerous occasions beginning on August 1, 2005 that he wanted temporary care and custody of his own son EM. Neither Bart nor EM had done anything wrong. Defendants never provided Bart any written reason why they denied Bart care and custody of his natural son EM. Plaintiffs Bart and EM claim that Defendants actions were the result of unlawful and unconstitutional policies and practices of Defendants and deprived them of their rights to be free from unreasonable seizures, and their rights to due process and equal protection of the laws, all guaranteed by the United States and Indiana Constitutions. In the process Defendants also violated Indiana laws and inflicted other injuries upon Plaintiffs.

## D. CAUSES OF ACTION

### Claim I
### Unconstitutional Supervisory Policies and Customs by Government Agencies and Officials under 42 U.S.C. § 1983, § 1985, § 1986

23. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 22 of this complaint.

24. The deprivations, injuries, and damages suffered by Plaintiffs were caused by policies, practices, customs, acts, and/or omissions which were encouraged, authorized, directed, condoned and ratified by authorized policy makers and supervisors of the Defendants Indiana-FSSA, Indiana-DFR, Indiana-DCS, Dubois-DCS, Payne, Robertson, Roob, Lesko, and Tobin under authority and color of state law.

25. Said policies, practices, and customs include, but are not limited to:

a. refusal to properly interview, cooperate, or communicate with legally recognized parents who do not have primary residential custody of their child,

b. discriminating against parents who do not have primary residential custody of their child, who are not alleged to have done anything wrong by anyone, by requiring that those parents undergo a criminal background check and home study before DCS considers placement in that parent's own home (presumption of guilty until proven innocent), when that same treatment does not apply to parents that have primary residential custody of their child,

c. limiting visitations between a fit parent and his child to one hour of supervised visitation per week when neither is alleged to have done anything wrong,

d. giving preference to state foster care over a child's own parent who has a significant ongoing relationship but who did not have primary residential custody,

e. placing a child in state foster care because Defendants receive additional state and

federal dollars, instead of placing a child with his fit parent whose only plight is that he does not have primary residential custody of his child,

f. refusal to return a child to his own fit parent even after a significant ongoing and loving parent-child relationship becomes apparent to any reasonable person,

g. treating half-siblings who have different parents as if those siblings are an inseparable package, without regard to each child's individual parents and extended family circumstances, and each individual child's best interests,

h. refusing to assign separate case numbers to half-siblings that have different sets of parents (in violation of Indiana law),

i. otherwise ignoring the constitutional rights and responsibilities held by legally recognized fit parents who do not have primary residential custody of their child.

26. Defendants, knew, or in the exercise of due diligence should have known, that Tempel and other Defednants were engaged in unlawful and unconstitutional conduct. Defendants had the power but failed to take proper preventative or remedial measures to guard against the conduct of Tempel and other Defendants. Had such supervisory personnel taken such measures, Plaintiffs would not have suffered the deprivation of Constitional Rights.

27. The conduct of the supervisory personnel amounted to deliberate indifference, or deliberate misconduct, or conspiracy, which directly caused the deprivations suffered by Plaintiffs.

28. Bart put Defendants on formal written notice hand delivered to Tempel on Septemnber 1, 2005 that he intended to file suit in Federal District Court for violation of his Constitutional Rights if Defendants did not return his son EM to him immediately. Instead of Defendants taking action to immediately return EM to his fit father Bart (by simply petitioning the Court to do so), Defendants deliberately and with egregious indifference ignored Bart's notice and continued to

violate Bart's and EM's Cconstitutional Rights for another 76 days.

29. As a direct and proximate result of the policies, customs, and supervisory acts and/or omissions by Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, and Tobin, the Defendants have denied Plaintiffs their Constitutional Rights, statutory and legal rights, and Plaintiffs have suffered compensatory, general, and special damages, including, but not limited to, extreme mental and emotional distress, fear (of retaliation from DCS), humiliation, discomfort, anxiety, loss of companionship, attorney fees, and loss of income.

**Supporting Facts - Claim I**

30. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 29 of this complaint.

31. Hospital tests indicated that AS had methamphetamine in his system at birth.

32. On Friday July 29, 2005, Tempel accompanied by 2 police officers entered the home of Kim and Mark without a search warrant. Tempel administered methamphetamine tests to Kim and Mark and both tested positive for methamphetamine in their system.

33. No evidence of methamphetamine was found in the home or documented by anyone.

34. No evidence of any abuse or neglect was ever alleged or reported specific to EM (as opposed to AS).

35. The only evidence relating to EM in Dubois-DCS records points to just the opposite:

> "EM appeared to be a bright, healthy little boy." *(Intake Officer's Report of Preliminary Inquiry and Investigation dated 8-1-05 signed by Amy Tempel, Lana Tobin, and Susan Lesko).*

36. EM's father Bart was at work on Friday evening July 29, 2005 at the time his son EM was removed from the home of Kim and Mark. Tempel attempted to contact Bart at his home, and left a message on Bart's answering machine. Tempel did not attempt to reach Bart at his work phone, which Amy could have gotten by simply asking Kim.

37. Dubois-DCS was closed on Saturday July 30, 2005, and Sunday July 31, 2005.

38. Bart attended a detention hearing on Monday morning August 1, 2005

39. Dubois-DCS did not interview Bart prior to the detention hearing on August 1, 2005.

40. Bart was never interviewed at all by Dubois-DCS – on any subject matter at any time.

41. Bart was not aware that Dubois-DCS intended to place his son EM into state foster care on the morning of August 1, 2005.

42. Bart requested that he be given temporary care and custody of his own son EM both in Court testimony and discussions with Tempel on August 1, 2005.

43. Tempel and Dubois-DCS ignored Bart's requests for temporary custody of his own son EM on August 1, 2005, and instead petitioned the Court to place EM into state foster care.

44. Tempel requested a criminal background check on Bart on August 1, 2005.

45. Bart's background check did not return any history of criminal conduct.

46. No allegations that either Bart or EM did anything wrong were ever presented.

47. The Court Entry reflecting the Detention Hearing held on August 1, 2005 together with the Court's Findings and Orders were prepared by Attorney for Dubois-DCS Rahman but were not date stamped as filed and signed by the Judge until August 16, 2005.

48. The Court Entry reflecting the Detention Hearing held on August 1, 2005 clearly identifies Bart as the legal father of EM.

49. The Court Entry reflecting the Initial Hearing held on August 9, 2005 together with the Court's Findings and Orders were prepared by Rahman but were not date stamped as filed and signed by the Judge until August 23, 2005.

50. The Court Entry of August 9, 2005 clearly reflects that Bart is the father of EM, that Bart denied that EM was a Child In Need of Services; but nonetheless the Court Order prepared

by Rahman, orders that EM remain in both the physical and legal custody of the Dubois-DCS, and that EM shall remain in foster care placement, and also Orders Bart to pay $54.00 a week in child support which will be remitted to Dubois-DCS (which was previously directed to Kim).

51. Bart continued to pay $54.00 a week in child support directed to Dubois-DCS as ordered, in spite of the fact that Bart had reservations about funding deprivation of his own rights.

52. On September 21, 2005 Bart filed a Motion to Correct Errors in the Court Record of Initial Hearing on August 9, 2005 and said pleading is made an integral part herein by reference.

53. On October 18, 2005 Rahman filed a Response to Bart's Motion to Correct Errors, and among other defenses, asserts that Bart's Motion was not timely filed within the required 30 day limit. Rahman knew the clock could not possibly start ticking until the Entry and Orders for the Hearing held on August 9, 2005 prepared by Rahman herself were filed by Rahman with the Court and date stamped on August 23, 2005 (not on August 9, 2005).

54. EM remained in state foster care for 111 days until November 16, 2005.

55. Since no abuse or neglect involving EM was ever alleged or reported, and no specific facts or evidence were ever presented by Dubois-DCS or anyone else, EM could not legally be defined as even an *Alleged* Child In Need of Services as specifically defined by Indiana Code § 31-34-1-1, Indiana Code § 31-34-1-2, or any other provision of Indiana Code: Title 31 – Article 34; much less defined as a Child In Need of Services (CHINS).

56. On August 2, 2005 Bart faxed the first of 6 letters requesting that Dubois-DCS cite the specific reasons why they were denying Bart care and custody of his own son EM.

57. Dubois-DCS did not respond to Bart's written requests. Dubois-DCS never provided any written reason to Bart as to why Dubois-DCS was denying Bart care and custody of his own natural son EM.

58. In that same letter faxed to Dubois-DCS on August 2, 2005 Bart specifically stated:

> "I do not find where you have the authority to require me to move to Indiana or more specifically, Dubois County, for me to have custody of my own son EM. However, I would move if that would release EM into my custody immediately."

That way, EM could remain in his Huntingburg school and close to his family and friends.

59. Amy and/or Dubois-DCS never responded to Bart's letter; but without discussing the matter with Bart, and without Bart's consent, removed EM from Dubois County and enrolled EM in a Crawford County school.

60. Dubois-DCS limited Bart to one hour of supervised visitation with EM each week.

61. Tempel, Tobin, Lesko, and Dubois-DCS refused to have any meaningful communication with Bart.

62. Rahman advised Defendants not to communicate directly with Bart.

63. The first reason given by Dubois-DCS to not communicate directly with Bart was that Dubois-DCS was only going to communicate through Bart's attorney.

64. When Bart filed his appearance to represent himself pro se, Dubois-DCS continued to refuse to communicate, answer Bart's letters, emails, and phone calls – orally or in writing.

65. Dubois-DCS made a deliberate decision not to communicate with the natural father (Bart) of a 6-year-old boy (EM) detained within their possession, oversight, and control.

66. Because Dubois-DCS refused to cooperate or even communicate with Bart for 4 weeks, Bart filed a Motion for an Emergency Hearing for Immediate Possession of his Son EM with the Court on August 29, 2005.

67. EM and Bart did not do anything wrong, but nonetheless the result was that they were being punished (kept separate) because of the wrongdoing of others (Kim and Mark).

68. Dubois-DCS compounded its disregard for Indiana Code § 31-34-4-2(a) and Indiana-

DCS Policy 303.41 by placing EM in state foster care for 111 days when EM's Father Bart, and several blood relatives immediately expressed their desire to provide care and custody of EM.

69. On several occasions, Dubois-DCS claimed that they were just following Court orders.

70. However, Dubois-DCS itself, through its Agent/Attorney Rahman, prepared all of the petitions and motions; and furthermore prepared all of the Court Orders placed in front of and signed by Dubois Circuit Court Judge William Wiekert in all cases involving EM and Bart.

71. Dubois-DCS never even alleged that Bart was an unfit father, much less ever presented any evidence or finding of fact that Bart was an unfit parent.

72. Bart had a strong 6-year loving relationship with his son EM.

73. Bart was current in payment of child support in behalf of EM.

74. EM spent a week with Bart and the extended McHugh family on vacation at Edisto Island Beach in late June 2005, just one month before Dubois-DCS began to confine EM in state foster care for 111 days.

75. Dubois-DCS never deemed Bart an unfit father, and never provided Bart any reason to deny Bart custody of his son EM, but nonetheless Dubois-DCS deliberately refused to petition the Court that EM be returned to his father Bart at any time during the 111 days of EM's confinement.

76. Plaintiffs believe that the Court would have reunited EM with his father Bart at any time during those 111 days if Dubois-DCS had simply petitioned for that action to the Court, just as Dubois-DCS had previously petitioned that EM be confined in state foster care.

77. On August 2, 2005 Bart also faxed the first of 4 letters requesting that Dubois-DCS assign EM a different DCS case number separate from AS.

78. Separate case numbers were required by Indiana law to preserve the legal privilege and confidentiality of the different parents involved in the 2 different cases (EM versus AS).

79. On September 13, 2005 the Court assigned a Court Cause Number to EM separate from AS. Bart immediately requested in writing that Dubois-DCS follow the Court's lead, and follow Indian law, and to do likewise with their DCS case numbers anf files.

80. Even after the Court assigned separate cause numbers, Dubois-DCS remained defiant in its refusal to assign a separate case number to EM, and continued to violate Indiana law.

81. Dubois-DCS was determined to treat EM and AS as one package, "siblings that cannot be separated" filed under "one number" in spite of the substantial differences and circumstances involving EM versus AS:

| EM | AS |
|---|---|
| Father is Barthalomew McHugh | Father is Mark Small |
| Bart did not do anything wrong | Mark tested positive for methamphetamine |
| No abuse or neglect ever observed or reported | AS tested positive for methamphetamine |
| 6-years-old and attends school | infant |
| Significant 6-year relationship with Father Bart | infant |
| Is a bright, healthy little boy" (per DCS report) | AS tested positive for methamphetamine |

82. Tempel and Dubois-DCS ignored their own Procedure 303.8 by failing to complete a genogram for EM at any time

83. Failure to complete a genogram is but one of many indications that Dubois-DCS in general, and Tempel in particular, did not take any time to investigate and consider EM's family background and EM's unique individual circumstances and needs separate from AS.

84. EM's individual needs and best interests were ignored throughout the DCS process.

85. Dubois-DCS actions and written Case Plan (only one plan) focused exclusively on methamphetamine abuse by Kim and Mark, and the resulting impact on AS.

86. Based on the Case Plan reviewed on September 1, 2005, Bart was expected to participate in the same services required for Kim and Mark, in spite of the fact that Dubois-DCS

or no one else had even alleged that Bart or EM had done anything wrong.

87. The Case Plan for EM (and AS) (State Form 2956/CW0046), identified Bart as "Other Contact" not as EM's Father

88. Bart immediately objected to not being identified as EM's Father.

89. Dubois-DCS ignored Bart's request and never corrected their September 1, 2005 Case Plan Report to identify Bart as father of EM.

90. Bart orally objected to several other errors contained within the Dubois-DCS Case Plan Report at their meeting on September 1, 2005; and then followed up with all of his objections in writing on September 6, 2005 via fax, again asking that said errors be corrected

91. Tempel and/or Dubois-DCS never responded to Bart's objections, or took any action to correct any of their errors in its September 1, 2005 Case Plan Report.

92. The Dubois-DCS Case Plan Report dated September 1, 2005 together with Bart's September 6, 2005 written response is made an integral part herein by reference.

93. Immediately following their September 1, 2005 meeting Bart handed Amy written Notice that he was going to file a civil rights lawsuit in Federal District Court if Defendants did not immediately return EM to his care and custody. A copy was also delivered to Rahman and to the Dubois-DCS office. That letter is made an integral part herein by reference.

94. Defendants took no such action because EM was not returned to Bart until 66 days later until November 16, 2005, and then only after Bart filed for and was granted full physical and legal custody of EM in a custody cause unrelated to the CHINS causes initiated by DCS.

95. EM had a much more significant 6-year relationship with his Father – Bart, than EM could possibly have with his then infant half-brother AS.

96. If Dubois-DCS and the Court considered "sibling" relationship to be of such

importance, rather than the significant 6-year "Father-Son" relationship between Bart and EM, then Dubois-DCS and Tempel failed to even consider and/or report to the Court the 20-month sibling relationship that EM already had with his sister MM .

(Relationships with EM: Bart = 6 years, MM = 20 months, versus AS = a few days).

97. Dubois-DCS also failed to take into consideration the significant relationships between EM and his extended paternal family: Grandparents Jerry & Pam McHugh, Uncle Matthew McHugh and his 6-year-old daughter AM (more like a sister to EM than a cousin), Aunt Martina McHugh-Webster, Aunt Marisa McHugh. Similar extended family relationships existed on the maternal Jones family side as well. All of these family members had an ongoing significant relationship with EM for 6 years. All of these strong family relationships were completely ignored by Tempel and/or Dubois-DCS. All are more significant than EM's relationship with an infant half-brother AS, and certainly take priority over state foster care.

98. Simply completing a genogram as required by Indiana-DCS's own Policy 303.8 would have easily pointed to all of these significant family relationships, most notably EM's 6-year relationship with his natural father and EM's 20-month relationship with his sister MM.

99. Dubois-DCS did not provide the Court all relevant information regarding EM's relationship with his Father Bart, his sister MM, and EM's extended family. These relationships were essential for the Court to know about in order for it to be fully informed in determining EM's best interests. Yet Dubois-DCS in general, and Tempel in particular, failed to provide any of this vital information to the Court.

100. Amy and Dubois-DCS ignored Bart's request that they talk to collateral contacts (his family and friends) to help determine his fitness as a father. One significant contact that was ignored was Paige Belk, the mother of Bart's 20-month-old daughter MM . Bart has custody and

care of MM 3 days each week under their joint parenting agreement.

101. On September 1, 2005 Tempel stated to Bart, with several witnesses present, that she did not consider collateral contacts and photographs to be very important to her.

102. Plaintiffs assert that collateral contacts and photographs have significant probative value. Tempel chose not to use these sources of investigation at all. As a result, the Court was denied relevant and probative information necessary to make a reasonable finding of facts and determine what was in the best interest of EM (as separate from AS).

103. At no time during any CHINS hearing was reference made to Bart's fitness as a father.

104. Hearings focused on methamphetamine abuse by Mark and Kim and the resulting impact on AS, Dubois-DCS collecting child support from all of the parties, including Bart, and why AS and EM should remain unseparated confined in state foster care.

105. Bart met with the Dubois County Child Protection Team (CPT) on January 20, 2006 to discuss Dubois-DCS mistreatment of Bart and EM.

## Claim II
## Violations of the Fourth Amendment
## under 42 U.S.C. § 1983, § 1985, § 1986

106. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 105 of this complaint.

107. The government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting childrens' interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. This liberty protection extends to both parents – those that have primary residential custody of their child, and those of parents that do not (roughly 50% based on current divorce statistics).

108. The U.S. Supreme Court has consistently protected parental rights, including them among those rights deemed fundamental. As a fundamental right, parental liberty is to be

protected by the highest standard of review: the compelling interest test. No compelling state interest was served by seizing EM and confining EM in state foster care and separated from his fit natural father Bart for 111 days.

109. Defendants actions were not objectively reasonable and violated the clearly established rights of both EM and Bart to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

110. Defendants actions were willful, wanton, malicious and oppressive, and done with deliberate or reckliess disregard and indifference to Plaintiffs rights.

111. As a direct and proximate result of Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, and Tobin, Tempel, and Rahman illegally seizing EM and violating parental liberty interests guaranteed by the Fourth Amendment, the Defendants have denied Plaintiffs their Constitutional Rights, statutory and legal rights, and Plaintiffs have suffered compensatory, general, and special damages, including, but not limited to, extreme mental and emotional distress, fear (of retaliation from DCS), humiliation, discomfort, and anxiety, loss of companionship, attorney fees, and loss of income.

**Supporting Facts - Claim II**

112. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 111 of this complaint.

**Claim III**
**Due Process Violations of the Fourteenth Amendments**
**under 42 U.S.C. § 1983, § 1985, § 1986**

113. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 112 of this complaint.

114. Bart made numerous written requests that Defendants respond to Bart in writing specifically identifying the reason(s) that Defendants were denying Bart care and custody of his

own son EM. Defendants never provided any written response and never confronted Bart with any reasons (charges) against him. Therefore, Bart never had any opportunity to respond to reason(s) that the Defendants never provided. Consequently, Defendants denied Bart his due process rights.

115. It is well established precedent that the state cannot separate a child from his father without a hearing designed to determine whether the father is unfit. Because no such hearing was ever held regarding Bart and EM, Plaintiffs were denied their due process rights guaranteed by the Fourteenth Amendment.

116. It is unconstitutional, illegal, and a due process violation to punish a child and a non-offending parent for the wrongdoing of others.

117. As a direct and proximate result of the Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, and Tobin, Tempel, and Rahman depriving Plaintiffs of their due process rights under the Fourteenth Amendment, the Plaintiffs have been denied their Constitutional Rights, statutory and legal rights; and have suffered general and special damages, including, but not limited to, extreme mental and emotional distress, fear (of retaliation from DCS), humiliation, discomfort, and anxiety, loss of companionship.

**Supporting Facts - Claim III**

118. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 117 of this complaint.

**Claim IV**
**Equal Protection Violations of the Fourteenth Amendment**
**under 42 U.S.C. § 1983, § 1985, § 1986**

119. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 118 of this complaint.

120. Defendants ignore the wishes of parents that do not have primary residential custody of their child, treat them as second class citizens, and deny them free and unsupervised

companionship with their children, even when they have not even been alleged to have done anything wrong. One example is limiting visitations between a fit parent that has not done anything wrong and his child that has not done anything wrong to one hour of supervised visitation per week when the other parent is the one guilty of wrongdoing.

121. Defendants require that a fit parent that has a demonstrated significant ongoing 6-year relationship with his child but does not have primary residential custody of that child to have a criminal background check and home study completed before Defendants even consider whether to allow them to have custody of their own child, even when there are no allegations of any wrongdoing made by anyone against that parent. This conduct presumes that a fit parent who does not have primary custody of their child is guilty (of something) until proven innocent, which is contrary to everything American and violates the equal protection rights guaranteed by the Fourteenth Amendment.

122. Defendants violated Plaintiffs' rights to equal protection guaranteed by the Fourteenth Amendment by discriminating against Bart simply because he did not have primary residential custody of his son EM. The equal protection guaranteed by the Fourteenth Amendment extends to both parents – those that have primary residential custody of their child, as well as those parents that are fit parents but who do not have primary residential custody of their child (roughly 50% based on current divorce statistics).

123. Defendnats also discriminated against Bart based upon their bias against male gender and fathers. Defendants cannot point to a female gender mother similarly situated that has been denied custody of her natural child for 111 days with no written reason ever provided to her.

124. As a direct and proximate result of the Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, and Tobin, Tempel, and Rahman depriving Plaintiffs of

their equal protection rights under the Fourteenth Amendment, the Plaintiffs have been denied their Constitutional Rights, statutory and legal rights; and have suffered compensatory, general and special damages, including, but not limited to, extreme mental and emotional distress, fear (of retaliation from DCS), humiliation, discomfort, and anxiety, loss of companionship.

**Supporting Facts - Claim IV**

125. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 124 of this complaint.

**Claim V**
**Loss of Companionship under 42 U.S.C. § 1983**

126. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 125 of this complaint.

127. As Bart's natural son, EM has a clearly established liberty interest in the companionship, care, nurturing, guidance, and love of Bart protected by the Due Process Clause of the Fourteenth Amendment.

128. As EM's natural father, Bart has a clearly established liberty interest in the companionship, care, custody, management, nurturing and love of EM protected by the Due Process Clause of the Fourteenth Amendment.

129. Defendants deprived EM and Bart of their liberty interest by intentionally, recklessly, and lawlessly failing to petition the Court to return EM to his natural father Bart, who was never even alleged to have done anything wrong during Defendants confinement of EM for a period of 111 days.

130. As a direct and proximate result of the actions of Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, and Tobin, Tempel, and Rahman, the Plaintiffs have suffered, continue to suffer, and will in the future suffer general and special damages, including, but not limited to, extreme mental and emotional distress, fear (of retaliation

from DCS), humiliation, discomfort, anxiety, and loss of companionship.

**Supporting Facts - Claim V**

131. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 130 of this complaint.

**Claim VI**
**Intentional Infliction of Emotional Distress**

132. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 131 of this complaint.

133. Defendants conduct was extreme and outrageous and exceeds the bounds tolerated by a decent society.

134. Such extreme and outrageous conduct includes but is not limited to: (a) illegally talking a 6-year-old child (kidnapping) (b) away from his natural loving father and keeping them separated for 111 days (interference with custody) (c) without providing any written reason for doing so; (d) recording the child's legally recognized natural father as "other contact" instead of father on official DCS reports and records, and (e) then deliberately refusing to correct said error when requested in writing to do so by the father; (f) DCS intransigence in refusing to assign separate case numbers to two individual children that had different fathers even after DCS was notified in writing that DCS was in violation of Indiana law.

135. Defendants acted willfully, maliciously, and deliberately with the intent to cause severe mental and emotional pain, distress, anxiety, anguish, and loss of companionship, or with reckless indifference to the likelihood that their behavior would cause such severe emotional distress and with utter disregard for the consequences of their actions.

136. As a direct and proximate result of the Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, Tobin, Tempel, and Rahman actions, the Plaintiffs have suffered, continue to suffer, and will in the future suffer, compensatory, general and special

damages, including, but not limited to, extreme mental and emotional distress, fear, humiliation, discomfort, anxiety, loss of companionship, and loss of income.

**Supporting Facts - Claim VI**

137. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 136 of this complaint.

**Claim VII**
**Violations Of Indiana Code § 35-42-3-4 Interference With Custody**

138. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 137 of this complaint.

139. Defendants seized EM and Interfered with Bart's custody of EM by confining EM in state foster care and separated and away from his legal Father (Bart) for 111 days without any written reason ever provided to his fit father Bart. This conduct by Defendants constitutes the statutory violation of Indiana Code § 35-42-3-4: Interference With Custody.

140. Plaintiffs do not seek criminal charges against Defendants, but rather Plaintiffs seek civil tort relief specifically provided for under Indiana Code § 34-24-3-1. which provides for treble damages for statutory violations of Indiana Code § 35-42-3-4.

141. The state of Indiana and its agencies, employees, and agents do not enjoy exemption from its own laws.

142. Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, Tobin, Tempel, and Rahman interfered with Bart's custody of EM for 111 days and their actions are a direct and proximate cause of the Plaintiffs incurring extreme mental and emotional distress, anxiety, loss of companionship, legal and other costs.

**Supporting Facts - Claim VII**

143. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 142 of this complaint.

**Claim VIII**
**Declaration of Rights**

144. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 143 of this complaint.

145. An actual controversy exists between Plaintiffs and Defendants in that Plaintiffs contend that the policies, practices, and conduct of the Defendants alleged herein are unlawful and unconstitutional, whereas Defendants contend that said policies, practices, and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

**Supporting Facts - Claim VIII**

146. Plaintiffs re-allege and incorporate by reference paragraphs 1 – 145 of this complaint.

**E. PREVIOUS LAWSUITS**

147. Plaintiffs have not been a party to any other lawsuits. As a means to reunite with his son EM after 111 days in state foster care due to the unlawful and unconstitutional actions by Defendants, Bart was forced by to seek full custody of EM in Cause NImber 19C01-0001-JP-0012.

**F. REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in favor of the Plaintiffs and against each of the Defendants FSSA, DFR, Indiana-DCS, Dubois-DCS, Roob, Robertson, Payne, Lesko, Tobin on each of the Claims I through VIII; and against each of the Defendants Tempel, and Rahman, on each of the Claims II through VIII; and also pray for:

1. A declaratory judgment that Defendants' conduct complained of was a violation of Plaintiffs' rights under the Constitution and laws of the United States and the state of Indiana;

2. Award Plaintiffs compensatory damages in an amount reasonably calculated to compensate Plaintiffs for the damages and injuries for which they incurred;

3. Award Plaintiffs general damages to compensate Plaintiffs for their pain and suffering

and loss of companionship;

4. Award Plaintiffs general and statutory damages to compensate Plaintiffs for Defendants' violations of Plaintiffs' Constitutional Rights;

5. Award Plaintiffs treble damages provided for under Indiana Code § 34-24-3-1;

6. Award Plaintiffs for costs of this lawsuit;

7. Award Plaintiffs attorneys' fees pursuant to 42 U.S.C. § 1988;

8. Award Plaintiffs all other relief as the Court may deem just and proper.

**G. JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

Bart J McHugh

Barthalomew J. McHugh, pro se

Bart J McHugh

EM, by his next friend and his
natural father Barthalomew J. McHugh, pro se

Both Plaintiffs' address:
136 North Patterson
Clarksville, IN 47129
Cell phone: 502 558-4871

**DECLARATION UNDER PENALTY OF PERJURY**

The undersigned declares under penalty of perjury that they are the plaintiffs in the above action, that Barthalomew J. McHugh has read the above complaint and that the information contained in the complaint is true and correct.

Executed at New Albany, Indiana on November 20, 2006

Bart J McHugh

Barthalomew J. McHugh, pro se

Bart J McHugh

EM, by his next friend and his
natural father Barthalomew J. McHugh, pro se